UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| AMERICAN LEGION POST #118, individually and on behalf of all others similarly situated, | )<br>)<br>)<br>) |
| Plaintiff, | ) Case No.: _____ |
| v. | ) JURY DEMAND |
| ILLINOIS CASUALTY COMPANY, | )<br>)<br>) |
| Defendant. | ) |

**CLASS ACTION COMPLAINT WITH JURY DEMAND**

COMES NOW Plaintiff, American Legion Post #118 ("Post 118"), individually and on behalf of all others similarly situated, and for its Class Action Complaint against Illinois Casualty Company ("ICC" or "Defendant") states and alleges the following:

**PARTIES, RESIDENCY, JURISDICTION AND VENUE**

1. Plaintiff Post 118, located in Amherst, Lorain County, Ohio, is an Ohio 501c(19) charitable veterans organization.

2. Defendant ICC is an Illinois corporation with its principal place of business in Rock Island, Illinois.

3. ICC is authorized to and sells property insurance policies in the states of Illinois, Ohio and Wisconsin.

4. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d). There are more than 100 members in the proposed class, at least one member of the proposed class has state citizenship that is different than Defendant's, the matter in controversy exceeds

$5,000,000, exclusive of interest and costs, and more than one-third of the members of the proposed class reside outside Illinois.

5. This Court has personal jurisdiction over Defendant as it is headquartered, domiciled, and has residency in Illinois.

6. Venue is proper in this forum pursuant to 28 U.S.C. §1391(b)(1), (c)(2), and (d) because Defendant is a corporation deemed to reside in this judicial district.

## FACTS

**A. The Property Insurance Policy and Casualty Loss**

7. ICC is a regional insurer that sells property insurance coverage for, *inter alia*, commercial buildings in twelve states, specifically including Illinois, Ohio and Wisconsin.

8. This lawsuit only concerns property coverage for buildings, and not personal contents, such as furniture and clothes.

9. The property insurance forms sold in Illinois, Ohio and Wisconsin are materially identical as it relates to the contractual dispute set forth herein.

10. The laws in Illinois, Ohio and Wisconsin are materially identical as it relates to the contractual dispute set forth herein, or at the least, any differences would be manageable in the class context. Specifically, these states are "replacement cost less depreciation" states for purposes of determining actual cash value under property insurance policies, or preclude the depreciation of labor in forms that do not expressly allow for the same by court decision, statute or state administrative agency.

11. Post 118 was insured pursuant to an insurance contract whereby ICC agreed to insure, *inter alia,* Post 118's property located on the Insured Premises against property damage, bearing Policy No. BP44139 (the "Post 118 Policy").

12. Post 118 paid ICC premiums in exchange for insurance coverage. The required premiums were paid at all times relevant to this Complaint.

13. The Post 118 Policy provided insurance coverage for direct physical loss to the dwelling and other structures located on the Insured Premises, except as specifically excluded or limited by the Post 118 Policy.

14. On or about April 8, 2020, Post 118's buildings and structures located at 921 North Lake Street, Amherst, Ohio (the "Insured Property") suffered damage covered by the Post 118 Policy.

15. Post 118 timely notified ICC of its loss, and made a claim against the Post 118 Policy.

16. Post 118 determined the loss to Post 118's property was covered by the terms of the Post 118 Policy.

17. ICC calculates its actual cash value payment obligations to its policyholders for structural damage loss by first estimating the cost to repair or replace the damage with new materials (replacement cost value, or "RCV"), and then ICC subtracts the estimated depreciation.

18. The ICC Policy, and the other property forms at issue in this pleading, do not permit the withholding of labor as depreciation as described below. In contrast with the Post 118 Policy, certain policies of insurance expressly allow for the depreciation of "labor" as described herein. The type of form or endorsement will be referred to herein as a "labor depreciation permissive form." The Post 118 Policy does not contain a labor depreciation permissive form.

**B. ICC's Calculation of Post 118's ACV Payment**

19. In adjusting Post 118's claim, ICC affirmatively and unilaterally chose to use a "replacement cost less depreciation" methodology to calculate the loss and make its ACV payment. It did not use any other methodology to calculate Post 118's ACV payment.

20. Soon after the April 8, 2020 loss, Post 118 sent an adjuster to inspect the damage to the Insured Property to estimate the ACV. Post 118 uses commercially-available computer software to estimate RCV, depreciation, and ACV. The software used to calculate the payment to the Plaintiff is called Xactimate®.

21. As set forth in a written Xactimate® estimate provided to Post 118 by ICC and dated July 9, 2020, ICC's adjuster determined that Post 118 had suffered a covered loss in the amount of $28,328.96 (the RCV) to its buildings and structures. The estimate included the cost of materials and labor required to complete the repairs.

22. In calculating its ACV payment obligations to Post 118, ICC subtracted from the RCV estimate the $1,000.00 deductible provided for in the policy plus an additional amount ($14,402.17) for depreciation. This resulted in a net ACV payment of $13,926.79. Post 118 was underpaid on its ACV claim as more fully described below.

**C. ICC's Practice Of Withholding Labor As Depreciation**

23. When it calculated Post 118's ACV benefits owed under the Post 118 Policy, ICC withheld costs for both materials and the labor required to repair or replace Post 118's buildings and structures as depreciation, even though labor does not depreciate in value over time. Post 118 withheld labor costs throughout its ACV calculations as depreciation.

24. Like all property insurance claims estimating software, the specific commercial claims estimating software used by Post 118 allows for the depreciation of materials only or the depreciation of both material and labor in its depreciation option setting preferences.

25. In this pleading, whenever reference is made to withholding "labor" as depreciation, "labor" means intangible non-materials, specifically including both the labor costs and the laborers' equipment costs and contractors/laborers' overhead and profit necessary to restore property to its condition immediately prior to the loss, as well as removal costs to remove damaged property, under commercial claims estimating software.

26. ICC's withholding of labor costs as depreciation associated with the repair or replacement of Post 118's property resulted in Post 118 receiving payment for its losses in an amount less than he was entitled to receive under the Post 118 Policy. Post 118 breached its obligations under the Post 118 Policy by improperly withholding the cost of labor as depreciation.

27. Plaintiff itself cannot determine the precise amount of labor that has been withheld based only upon the written estimate provided. To determine the precise amount of labor withheld, it is necessary to have access to the commercial property estimating program at issue, as well as the electronic file associated with the estimate.

28. While a property insurer may lawfully depreciate material costs when calculating the amount of an ACV payment owed to an insured, it may not lawfully withhold repair labor as depreciation under the ICC policy forms at issue in Illinois, Ohio and Wisconsin when using a replacement cost less depreciation methodology.

29. ICC's failure to pay the full cost of the labor necessary to return Post 118's structure back to its pre-loss condition left Post 118 under-indemnified and underpaid for its loss.

30. Post 118 does not dispute ICC's valuations of the amount of labor and materials necessary for the repair of her property to its pre-loss condition. Post 118 does not dispute any of ICC's valuations as to the depreciated values of the tangible property at the time of the loss. Post 118 only disputes whether portions of the agreed-to and undisputed amounts of labor, as determined by ICC itself, may be withheld by ICC as "depreciation" from Post 118's ACV payment under the terms and conditions of her insurance policy.

31. ICC materially breached its duty to indemnify Post 118 by withholding labor costs associated with repairing or replacing Post 118's property in its ACV payment as depreciation, thereby paying Post 118 less than he was entitled to receive under the terms of the Post 118 Policy, including but not limited to depriving Post 118 of the time use of its money resulting from the labor withholdings (even those calculated by ICC itself) in the form of prejudgment interest.

## AMOUNT IN CONTROVERSY

32. Upon information and belief, the amount in controversy with respect to the proposed class exceeds $5,000,000, exclusive of interest and costs.

## CLASS ACTION ALLEGATIONS

33. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this lawsuit as a class action on behalf of itself and on behalf of all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation. Only to the extent it is a requirement under applicable law, the proposed class herein is ascertainable.

34. The proposed class that Plaintiff seeks to represent is tentatively defined as follows:

> All ICC policyholders (or their lawful assignees) who made: (1) a structural damage claim for property located in Illinois, Ohio and Wisconsin; and (2) for which ICC itself accepted coverage and then chose to calculate actual cash value exclusively pursuant to the

replacement cost less depreciation methodology and not any other methodology, such as fair market value; and (3) which resulted in an actual cash value payment during the class period from which non-material depreciation was withheld from the policyholder; or which should have resulted in an actual cash value payment but for the withholding of non-material depreciation causing the loss to drop below the applicable deductible, for the maximum limitations period as may be allowed by law and arguments of counsel.

In this definition, "non-material depreciation" means application of either the "depreciate removal," "depreciate non-material" and/or "depreciate O&P" option settings within Xactimate® software or similar depreciation option settings in competing commercial software programs.

The class excludes any claims for which the applicable limits of insurance have been exhausted by initial actual cash value payments.

The class also excludes any claims arising under labor depreciation permissive policy forms, *i.e.*, those forms and endorsements expressly permitting the "depreciation" of "labor" within the text of the policy form, unless the use of those forms violate the law of the respective states at issue.

35. Plaintiff reserves the right to amend the definition of the proposed class through discovery. The following persons are expressly excluded from the class: (1) Defendant and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; and (3) the Court to which this case is assigned and its staff.

36. Plaintiff and members of the putative class as defined all have Article III standing as all such persons and entities, at least initially, received lower claim payments than permitted under the policy. Certain amounts initially withheld as labor may be later repaid to some policyholders with replacement cost provisions in their policies, if any. However, policyholders who have been subsequently repaid for initially withheld labor still have incurred damages, at the least, in the form of the lost "time value" of money during the period of withholding, *i.e.*, statutory

or common law prejudgment interest on the amounts improperly withheld, for the time period of withholding.

37. The members of the proposed class are so numerous that joinder of all members is impracticable. Plaintiff reasonably believes that hundreds or thousands of people geographically dispersed across Illinois, Ohio and Wisconsin have been damaged by ICC's actions. The names and addresses of the members of the proposed class are readily identifiable through records maintained by ICC or from information readily available to ICC.

38. The relatively small amounts of damage suffered by most members of the proposed class make filing separate lawsuits by individual members economically impracticable.

39. ICC has acted on grounds generally applicable to the proposed class in that ICC has routinely withheld labor costs as described herein in its adjustment of property damage claims under its policies of insurance. It is reasonable to expect that ICC will continue to withhold labor to reduce the amount it pays to its insureds under these policies absent this lawsuit.

40. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

   a. Whether ICC's policy language allows it to withhold labor costs in its calculation of ACV payments;

   b. Whether ICC's policy language is ambiguous;

   c. Whether ICC's withholding of labor costs in its calculation of ACV payments breaches the insurance policies;

   d. Whether ICC has a custom and practice of withholding labor costs in its calculation of ACV payments;

   e. Whether Plaintiff and members of the proposed class have been damaged as a result of ICC's withholding of labor costs in its calculation of ACV payments; and

    f. Whether Plaintiff and members of the proposed class are entitled to a declaration, as well as potential supplemental relief, under the Declaratory Judgment Act.

  41. Plaintiff's claim is typical of the claims of the proposed class members, as they are all similarly affected by ICC's custom and practice concerning the withholding of labor. Further, Plaintiff's claims are typical of the claims of the proposed class members because Plaintiff's claims arose from the same practices and course of conduct that give rise to the claims of the members of the proposed class and are based on the same factual and legal theories. Plaintiff is not different in any material respect from any other member of the proposed class.

  42. Plaintiff and its counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiff's interest does not conflict with the interests of the proposed class it seeks to represent. Plaintiff has retained lawyers who are competent and experienced in class action and insurance litigation. Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the members of the proposed class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the proposed class while recognizing the risks associated with litigation. Plaintiff reserves the right to have unnamed class members join it in seeking to be a class representative.

  43. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Joining all proposed members of the proposed class in one action is impracticable and prosecuting individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts

in which such cases would proceed. Individual litigation exacerbates the delay and increases the expense for all parties, as well as the court system. Individual litigation could result in inconsistent adjudications of common issues of law and fact.

44.     In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of Plaintiff and members of the proposed class. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

45.     Questions of law or fact common to Plaintiff and members of the proposed class, including those identified above, predominate over questions affecting only individual members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the necessary duplication of effort and expense that numerous individuals would require. Further, the monetary amount due to many individual members of the proposed class is likely to be relatively small, and the burden and expense of individual litigation would make it difficult or impossible for individual members of the proposed class to seek and obtain relief.  On the other hand, a class action will serve important public interests by permitting consumers harmed by ICC's unlawful practices to effectively pursue recovery of the sums owed to them, and by deterring further unlawful conduct. The public interest in protecting the rights of consumers favors disposition of the controversy in the class action form.

46. Class certification is further warranted because ICC has acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

47. Plaintiff may seek, in the alternative, certification of issues classes.

48. Rule 23(c)(4) provides that an action may be brought or maintained as a class action with respect to particular issues when doing so would materially advance the litigation as a whole.

## COUNT I
## BREACH OF CONTRACT

49. Plaintiff restates and incorporates by reference all preceding allegations.

50. ICC entered into policies of insurance with Plaintiff Post 118 and members of the proposed class. These insurance policies govern the relationship between ICC and Post 118, and members of the proposed class, as well as the manner in which claims for covered losses are handled.

51. The policies of insurance between ICC, Post 118 and the other members of the proposed class are binding contracts under Illinois, Ohio and Wisconsin law, supported by valid consideration in the form of premium payments in exchange for insurance coverage.

52. ICC drafted the insurance policies at issue, which are essentially identical in all respects material to this litigation concerning the withholding of labor as depreciation from ACV payments for structural loss.

53. In order to receive or be eligible to receive ACV claim payments in the first instance, Post 118 and the putative class members complied with all material provisions and performed all of their respective duties with regard to their insurance policy.

54. ICC breached its contractual duty to pay Post 118 and members of the proposed class the ACV of their claims by unlawfully withholding labor costs as described herein.

55. Additionally, ICC breached the Post 118 Policy by failing and refusing to promptly pay the amounts individually owed to Post 118 as required by the terms of the Post 118 Policy. As a result, Post 118 has been damaged in the amount of the unpaid portion of its claim, including but not limited to the actual cash value of the damage to its property.

56. ICC's actions in breaching its contractual obligations to Post 118 and members of the proposed class benefitted and continue to benefit ICC. Likewise, ICC's actions damaged and continue to damage Plaintiff and members of the proposed class.

57. ICC's actions in breaching its contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiff and members of the proposed class.

58. In light of the foregoing, Plaintiff and members of the proposed class are entitled to recover damages sufficient to make them whole for all amounts ICC unlawfully withheld from their ACV payments, including prejudgment interest as may be allowed by law.

## COUNT II
## DECLARATORY JUDGMENT AND RELIEF

59. Plaintiff restates and incorporates by reference all preceding allegations.

60. This Court is empowered by the Declaratory Judgment Act as codified at 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 to declare the rights and legal relations of parties regardless of whether further relief is or could be claimed.

61. A party may seek to have insurance contracts, before or after a breach, construed to obtain a declaration of rights, status, and other legal relations thereunder adjudicated.

62. Plaintiff and members of the proposed class have all complied with all relevant conditions precedent in their contracts.

63. Plaintiff seeks, individually and on behalf of the proposed class, a declaration that ICC's property insurance contracts prohibit the withholding of labor costs as described herein when adjusting losses under the methodology employed herein.

64. Plaintiff further seeks, individually and on behalf of the proposed class, any and all other relief available under the law arising out of a favorable declaration.

65. Plaintiff and members of the proposed class have and will continue to suffer injuries.

## JURY DEMAND

66. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully request that this Court:

1. Enter an order certifying this action as a class action, appointing Plaintiff as the representative of the class, and appointing Plaintiff's attorneys as counsel for the class;

2. Enter a declaratory judgment, declaring that ICCs withholding of labor costs as depreciation is contrary to and breaches the insurance policy issued to Post 118 and members of the class;

3. Enter a declaration, and any preliminary and permanent injunction and equitable relief against ICC and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the policies, practices, customs, and usages complained of herein, as may be allowed by law;

  4.  Enter an order that ICC specifically perform and carry out policies, practices, and programs that remediate and eradicate the effects of its past and present practices complained of herein;

  5.  Award compensatory damages for all sums withheld as labor costs under the policy, plus prejudgment interest on all such sums, to Plaintiff and members of the proposed class;

  6.  Award compensatory damages to Plaintiff for all amounts to which he is entitled pursuant to the Post 118 Policy as a result of the Loss;

  7.  Award costs, expenses, and disbursements incurred herein by Plaintiff and members of the proposed class as may be allowed by law, including but not limited to amounts available under the common fund doctrine;

  8.  Pre- and Post-Judgment interest; and

  9.  Grant such further and additional relief as the Court deems necessary and proper.

Respectfully submitted,

*/s/ Scott D. Green*
J. BRANDON McWHERTER
(TN Bar #21600)
**McWHERTER SCOTT BOBBITT PLC**
341 Cool Springs Blvd., Suite 230
Franklin, TN 37067
(615) 354-1144
brandon@msb.law

SCOTT D. GREEN
**The Law Offices of Scott Green**
421 W. Oakdale Ave.
Chicago, IL 60657
(773) 270-4704
sgreen@sdglawoffices.com

T. JOSEPH SNODGRASS
 (MN Bar #231071)
**LARSON • KING, LLP**
30 E. 7th Street, Suite 2800
St. Paul, MN 55101
(651) 312-6500
jsnodgrass@larsonking.com

ERIK D. PETERSON (KY Bar 93003)*
**Mehr, Fairbanks & Peterson**
 **Trial Lawyers, PLLC**
201 West Short Street, Suite 800
Lexington, Kentucky 40507
Telephone: 859-225-3731
Facsimile: 859-225-3830
Email: edp@austinmehr.com
**\*to be admitted** *pro hac vice*

*Attorneys for Plaintiff and*
*Putative Class Representative*